UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

HON. JASON NEMES, et al.                                                                    PLAINTIFF

vs.                                                            CIVIL ACTION NO. 3:20-CV-407-CRS

CARL BENSINGER, et al.                                                                    DEFENDANTS

MEMORANDUM OPINION

I.   Introduction

This matter is before the Court on Proposed Intervenor Amy McGrath for Senate Inc.'s motion to intervene. DN 18. Defendant Secretary Michael Adams has responded. DN 21. Amy McGrath for Senate Inc. replied. DN 23. The matter is now ripe for adjudication. For the following reasons, the Court will deny the motion.

II.  Factual Background and Procedural History

This case arises from a challenge to the voting procedures for the upcoming Kentucky primary election. On March 16, 2020, the Secretary of State, Michael Adams, moved the Kentucky primary election from May 19, 2020, to June 23, 2020 ("Election Day").[1] The global COVID-19 pandemic, which still affects everyday life in the United States, necessitated the delayed election. On April 23, 2020, the Secretary issued a letter to Kentucky Governor, Andrew Beshear, recommending the Governor implement certain procedures by executive order for the upcoming primary election. DN 1 at ¶ 46; *See* Letter from Secretary of State Adams to Governor Beshear (April 23, 2020) (https://governor.ky.gov/attachments/20200423_Ltr-from-Sec-of-State-Adams.pdf). Among his recommendations, the Secretary stated "[t]he State Board of Elections by

---

[1] https://www.nytimes.com/article/2020-campaign-primary-calendar-coronavirus.html#link-28cf57c0

1

emergency regulation shall empower all county clerks to reduce the number of sites for in-person voting on June 23, 2020." *Id*. On April 24, 2020, in response to this letter, the Governor issued an Executive Order which directed the Kentucky Board of Elections to promulgate emergency regulations pertaining to the execution of the primary election. DN 1 at ¶ 46; Exec. Order 2020-296 (Apr. 24, 2020). In this Executive Order, the Governor ordered the Board of Elections to "promulgate emergency regulations to provide [] expanded absentee voting by mail" and "take all reasonable steps to ensure the safety of county clerks and poll workers when direct voting (not by mail) is necessary." *Id*. On May 1, 2020, the Board of Elections issued emergency regulation 31 KAR 4:190E which put forth the procedures to expand absentee voting by mail. *See* 31 KY. ADMIN. REGS. 4:190E (2020); DN 1 at ¶ 46. This regulation also required each county in the commonwealth to submit a plan to the Board of Elections regarding in-person voting. *Id*.; DN 1 at ¶ 46. On June 3, 2020, the Kentucky Board of Elections held a meeting to discuss the plans submitted by each county. DN 1 at ¶ 79. Ultimately, the Board approved plans from Jefferson, Fayette, and Kenton counties that provided one polling precinct for in-person voting on election day.[2] *Id.* at ¶ 86.

Plaintiffs, Hon. Jason Nemes, James Howland, Ken Kearns, Aaron Gillum, Theodore Roberts, Tyson Hermes, and Erik Hermes (collectively the "Plaintiffs") have brought suit against the County Clerks, County Sheriffs, and County Board of Election members of Jefferson, Fayette, and Kenton counties, the Members of the State Board of Elections, the Secretary of the State of Kentucky Michael Adams, and the Governor of the Commonwealth of Kentucky Andrew Beshear

---

[2] Plaintiffs originally included the County Clerks, County Sheriffs, and County Board of Election members for Boone and Campbell counties in their complaint. DN 1 at ¶ 31–32. The parties have agreed to dismiss Boone and Campbell counties from the case. DN 31. Based on the agreed order, Boone and Campbell counties will now operate two polling locations on Election Day. *Id.* As of the writing of this memorandum opinion, Jefferson, Fayette, and Kenton counties remain in the case.

(collectively the "Defendants"). DN 1. Plaintiffs bring two claims: (1) violation of the First and Fourteenth Amendment's fundamental right to vote under 42 U.S.C. § 1983 against all Defendants, and (2) violation of Section 2 of the Voting Rights Act 52 U.S.C. § 10301 "in relation to the single precinct in Fayette and Jefferson counties." DN 1 at ¶ 95–112. At bottom, Plaintiffs challenge the constitutionality of Jefferson, Fayette, and Kenton counties' plans to use a single polling location on election day. *Id*. Plaintiffs seek "declaratory relief, and prospective injunctive relief…declaring the challenged single polling precinct, at least in Kentucky's most populous counties, in contravention of the First and Fourteenth Amendments of the United States Constitution." *Id*. at ¶ 113. On June 10, 2020, the Plaintiffs filed a motion for a Temporary Restraining Order that is currently pending before the Court. DN 4.

Amy McGrath for Senate Inc. (hereinafter the "McGrath Campaign" or the "Campaign") is "the primary political committee for Amy McGrath's campaign for the United States Senate." DN 18-3 at ¶ 12 . On June 12, 2020, the McGrath Campaign filed a motion to intervene in the underlying case pursuant to Rule 24 of the Federal Rules of Civil Procedure. DN 18. According to its Proposed Complaint, the McGrath Campaign seeks to bring four claims against the Defendants. Counts I and II are claims under § 1983 for alleged First and Fourteenth Amendment violations and denial of procedural due process rights under the Fourteenth Amendment. DN 18-3 at ¶ 81–94. These claims allege that the emergency regulations promulgated by the Board of Elections with regard to absentee voting severely burden "thousands of Kentuckians' right to vote" and violate Kentucky voters' procedural due process rights. *Id*. Count III is a claim under § 1983 that alleges the "different approaches" taken by Kentucky counties with regard to in-person voting and absentee voting will deny voters equal protection under the law in violation of the Fourteenth Amendment. *Id.* at ¶ 95–99. Finally, Count IV alleges a violation of Section 2 of the Voting Rights

Act under 52 U.S.C. § 10301. *Id*. at ¶100–103. The Campaign alleges that the "single polling locations in Fayette and Jefferson counties" will disenfranchise black voters in Kentucky "on account of their race or color." *Id*. at ¶ 103. The Campaign also asserts that it has Article III standing and is, therefore, a proper plaintiff in the case. *Id*. at ¶ 14–17.

The McGrath Campaign seeks the following declaratory and injunctive relief from the Court: (1) a declaration that the "current system" of absentee voting is unconstitutional (*Id.* at p. 23 ¶ A), (2) a declaration that the single polling locations in Jefferson, Fayette, and Kenton, counties (in addition to other large Kentucky counties) are unconstitutional (*Id.* at p. 23 ¶ B), (3) permanent and preliminary injunctive relief requiring additional staff in County Clerks' offices (*Id.* at p. 23 ¶ C), (4) permanent and preliminary injunctive relief requiring secure drop boxes for absentee ballots (*Id.* at p. 23 ¶ D), (5) permanent and preliminary injunctive relief prohibiting a single polling location in Jefferson, Fayette, and Kenton counties (*Id.* at p. 24 ¶ E), (6) permanent and preliminary injunctive relief requiring extended hours for polling locations on election day (*Id.* at p. 24 ¶ F), (7) permanent and preliminary injunctive relief requiring extended hours for polling places to accommodate in-person absentee early voting (*Id.* at p. 24 ¶ G), (8) permanent and preliminary injunctive relief requiring personal protective equipment for all poll workers (*Id.* at p. 24 ¶ H), (9) permanent and preliminary injunctive relief requiring a plain for disabled and elderly voters who plan to vote in-person on election day (*Id.* at p. 24 ¶ I), and (10) permanent and preliminary injunctive relief requiring a secure and efficient process for voters who want to vote in-person on election day (*Id.* at p. 24 ¶ J).

### III. Legal Standard

With regard to intervention as of right, Federal Rule of Civil Procedure Rule 24(a)(2) provides that a court must permit a plaintiff to intervene who "claims an interest relating to the

property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical mater impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." A proposed intervenor under this rule must establish four elements: "(1) the motion to intervene is timely, (2) the proposed intervenor has substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect that interest may be impaired in the absence of intervention and (4) the parties already before the court may not adequately represent the proposed intervenor's interest." *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005).

With regard to permissive intervention, Rule 24(b)(1)(B) provides that "[o]n a timely motion, [a] court may permit anyone to intervene who…has a claim or defense that shares with the main action a common question of law or fact." To intervene permissibly under Rule 24(b)(1)(B), a proposed intervenor "must establish that the motion to for intervention is timely and alleges at least one common question of law or fact." *United States v. Michigan*, 424 F.3d at 445. "Once these two requirements are established, the district court must then balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the Court's discretion, intervention should be allowed." *Id.*

**IV.     Discussion**

The Campaign seeks to intervene as a matter of right under Rule 24(a)(2) or, in the alternative, permissively intervene under Rule 24(b)(1)(B). DN 18 at 3, 8. The Court concludes that the Campaign is not entitled to intervene as of right and its permissive intervention in this case is not appropriate.

**A.     Intervention as of Right.**

The Campaign asserts that it satisfies each element and, therefore, it must be allowed to intervene in the case. DN 18 at 3–8. To intervene as a matter of right, the proposed intervenor "must prove each of the four [elements]; failure to meet one of the criteria will require that the motion be denied." *United States v. Michigan*, 424 F.3d at 443 (quoting *Grubbs v. Norris*, 870 F.2d 343, 345 (6th. Cir. 1989). There is no need to address the first three factors because the Campaign has failed to demonstrate that the current plaintiffs do not adequately protect its interests in the case.

The Sixth Circuit has held that there is a presumption the parties already before the court adequately represent the interests of the proposed intervenor. *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) (citing *Wade v. Goldschmidt*, 673 F.2d.182, 186 n. 7 (7th Cir. 1982) (per curiam)). A proposed intervenor fails to overcome this presumption "when no collusion is shown between the representatives and an opposing party, when the representative does not have or represent an interest adverse to the proposed intervenor, and, when the representative has not failed in its fulfillment of its duty." *Id.* The McGrath Campaign has failed to demonstrate any of those circumstances in this case.

The Plaintiffs seek declaratory relief and prospective injunctive relief "declaring the challenged single polling precinct unconstitutional, at least in Kentucky's most populous counties." DN 1 at ¶ 113. Plaintiffs' claims relate solely to the decision to have a single polling location in Jefferson, Fayette, and Kenton counties. *Id.* The McGrath Campaign does not contend that the Plaintiffs have colluded with Defendants, have an adverse interest to the Campaign, or have failed to fulfill any duty as parties to the case with regard to these claims. Rather, the Campaign only argues that its proposed complaint has a distinct legal interest "in ensuring fair elections and access to polls on behalf of all voters in each Kentucky County, *particularly as it*

*relates to absentee ballots.*" DN 18-1 at 8 (emphasis added). It does not address the adequacy of the representation of its interest with regard to the claims relating to the single polling location in the named counties. The question before the Court is whether Plaintiffs adequately represent the Campaign's interest with respect to the claims related to the single polling locations, not whether the Campaign's interest for its adjacent claims is represented.

Plaintiffs adequately represent the Campaign's interest in the claims relating to the single polling location in the named counties. Indeed, the Campaign and the Plaintiffs bring nearly identical claims under the Voting Rights Act and seek nearly identical injunctive and declaratory relief with regard to the single polling locations. The Campaign fails to "actually 'demonstrat[e] that [the Plaintiffs] [would] not protect the interest held by the' proposed intervenor." *Moore v. Johnson*, No. 14-11903, 2014 WL 2171097, at *2 (E.D. Mich. May 23, 2014) (citing *Michigan State AFL–CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997)). Accordingly, the Court will deny the McGrath Campaign's motion to intervene by right.

### B. Permissive Intervention

The Campaign alternatively asserts that the Court should exercise its discretion and grant permissive intervention under Rule 24(b)(1)(B). The Court acknowledges that the Campaign's motion was timely and it does allege at least one common question of law or fact, that being its claims relating to the single polling locations in the named counties. The Campaign asks the Court to allow it to intervene in the case and assert new additional claims pertaining to absentee ballots that were not the subject matter of the original complaint. Based on this expansion of claims, the Court finds that the undue delay and prejudice to the original parties and other relevant factors deem permissive intervention inappropriate.

First, time is of the essence in this case; Plaintiffs filed their motion for a temporary restraining order on June 10, 2020, while Election Day is June 23, 2020. DN 1 at ¶ 3. The Campaign's proposed claims would unnecessarily expand the scope of the litigation in this case to include a new challenge to the absentee ballot procedures promulgated by the Board of Elections. *See League of Women Voters v. Va. State Bd. of Elections*, *et al.*, No. 6:20-CV-24, 2020 WL 2090679, at *5 (E.D. Va. April 30, 2020). The Court is not inclined to allow intervention when the Campaign's new additional claims regarding absentee ballots would "undermine the efficiency of these time-sensitive proceedings." *Moore*, 2014 WL 2171097, at *3.

Further, the Court notes that on April 24, 2020, Governor Beshear issued an executive order that directed the Board of Elections to promulgate emergency regulations for expanded absentee voting by mail. DN 1 at ¶ 46; Exec. Order 2020-296 (Apr. 24, 2020). In response, on May 1, 2020, the Board of Elections issued emergency regulations that outlined the procedure for absentee voting by mail. *See* 31 KY. ADMIN. REGS. 4:190E (2020); DN 1 at ¶ 46. The McGrath Campaign has had over a month to raise its claims regarding absentee voting procedures, and yet it now attempts to intervene in this suit by arguing its interest cannot be adequately represented by the Plaintiffs. The Court finds that attaching these new legal claims at this late hour, merely because there is now a case before the Court, would "detract from…the timely resolution, clarity, and focus on, solely the weighty [sic] issues to be addressed in this case." *League of Women Voters*, 2020 WL 2090679 at *5.

Second, there is a question of law as to whether the Campaign has Article III standing to assert its proposed claims in this case. "A plaintiff has Article III standing if he suffered an injury in fact that is concrete, particularized or imminent; fairly traceable to the defendant's challenged conduct; and likely to be redressed by a favorable judgment." *Shelby Advocates for Valid Elections*

*v. Hargett*, 947 F.3d 977, 980–981 (6th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016)). "To obtain declaratory or injunctive relief a claimant must show a present ongoing harm or imminent future harm" *Id.* (quoting *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001)). The Campaign asserts that it has satisfied Article III standing under both organizational and associational standing. DN 18-3 at ¶ 14–17.

The Campaign argues that it has satisfied organizational standing because it has "[redirected] [its] attention and resources toward turning out voters who would otherwise vote at the polls," and "educating voters about absentee voting and early voting." *Id.* at ¶ 15. But, as the Sixth Circuit has previously articulated, "an organization can no more spend its way into standing based on speculative fears of future harm than an individual can." *Shelby Advocates for Valid Elections*, 947 F.3d at 982 (citing *Clapper v. Amnesty Int'l*, 568 U.S. 398, 416 (2013)). The alleged diversion of funds did not divert resources from the Campaign's ultimate mission: to have its candidate win the primary and general elections. Indeed, "turning out voters who would otherwise vote at the polls" and "educating voters about absentee voting and early voting" are essential to fulfilling that mission. Accordingly, the Campaign cannot establish organizational standing by simply spending more money on initiatives that ultimately support its mission. *See Id.*

The Campaign also asserts that it has satisfied associational standing. An association may satisfy Article III standing if the association's "members would otherwise have standing to sue in their own right." *Id.* (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)). The Campaign claims that "[s]upporters of the campaign have standing to sue in their own right because many supporters have not obtained the ability to vote early or with an absentee ballot, despite their best efforts."[3] DN 18-3 at ¶ 17. Like its organizational standing argument, the

---

[3] The McGrath Campaign claims that it will "produce declarations of campaign staff who have experienced lengthy delays in getting absentee ballots, causing them great concern about their ability to vote." DN 23 at 5. Further, it also

Campaign cannot manufacture its own standing by asserting the nebulous interests of an undefined population of voters, who happen to support the Campaign. Accordingly, the Campaign cannot establish associational standing to properly assert its claims.

The Court notes that it is not required to decide the question of justiciability at this stage in litigation. *See Crawford v. Marion Cty. Election Bd.*, 472 F.3d. 949, 951 (7th Cir. 2007) (*aff'd*, 553 U.S. 181, 128 (2008) (affirming district court decision granting summary judgment and holding that only one plaintiff with standing is required because the parties were seeking injunctive relief). But, nonetheless, the Court, finds that the uncertain assertion of Article III standing, coupled with the undue expansion of the original claims before the Court, counsels against permissive intervention.

Third, the Court notes that the Campaign asks the Court to enter permanent and preliminary injunctive relief "requiring the Defendants extend the hours that polling places will remain open on Election Day form 6:00 a.m. until 9:00 p.m. local time." *Id.* at p. 24 ¶ F. This particular remedy is distinct from the relief sought by the Plaintiffs. The Court finds that the Plaintiffs can adequately articulate this remedy in their case and, therefore, it does not support allowing permissive intervention.

## V. Conclusion

In conclusion, the Court finds that the Plaintiffs adequately represent the Campaign's interest in its claims related to single polling locations in Kentucky's largest counties. Therefore, the Court will deny the Campaign's motion to intervene as of right. Further, while the Court

---

asserts that "it will present a declaration of another staff person who requested a Democratic absentee ballot, but received a Republican absentee, creating a real question of whether the voter can have this error corrected in time to cast a vote on June 12 in light of the current rules." *Id.* "Arguments in parties' briefs are not evidence." *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006). Accordingly, the Court will only consider what the Campaign has put forth in its proposed complaint.

acknowledges that the Campaign's motion was timely and alleges at least one common question of law or fact, the Court finds that permissive intervention is not warranted. The Campaign's new and additional claims regarding the absentee ballot procedures, which it arguably could have raised well before the Plaintiff's filed their case, would unduly prejudice the Plaintiffs and detract from the issues currently before the Court. As the election is now less than one week away, we will concentrate our attention on the polling place issues which have been properly raised before this Court. Finally, the Campaign's infirm Article III standing counsels against allowing intervention. Accordingly, the Court will deny the McGrath Campaign's motion to intervene. DN 18. A separate order will be entered in accordance with this opinion.

June 16, 2020

**Charles R. Simpson III, Senior Judge**
**United States District Court**